**Graham Estate**

*Larry Coploff,* for petitioner.
*David M. Weixel,* for respondents.

BROWN, *P.J.,* July 29, 1980—Claimants, James and Jean Conti, filed objections to the First and

Final Account of Fidelity National Bank of Pennsylvania, Executor of the Estate of Bessie L. Graham, alleging that the executor refused to honor claims submitted by them for services rendered to the decedent prior to her death. The objections have been referred to an auditor, and a hearing before him is now in process.

One issue arising out of the claims relates to whether claimants were ever paid for the services they rendered. In connection with the auditor's hearing, claimants are seeking from Fidelity by subpoena certain checks, or copies thereof, drawn on decedent's checking account in order to help establish that they were not paid. Fidelity has petitioned the court to quash the subpoena or in the alternative, to require claimants to post security for the estimated costs of obtaining copies of the checks, and thereafter to pay for the actual cost of locating and copying the checks. By way of testimony of William M. Marino, Jr., Vice President of Fidelity National Bank of Pennsylvania, petitioner sought to establish the burdensome and unreasonable nature of the subpoena. He estimated that he would have to produce in excess of 240 checks, that the search for the checks on the microfilm would require a minimum of 120 man hours, that the minimum time needed for the search would be four weeks, and that the cost of locating and producing copies would be over $1,000.

The issue now before the court is not susceptible of resolution based upon any clear authority. Briefs and oral arguments have proceeded upon the theory that whether Fidelity must produce the requested checks depends upon an interpretation of the Pennsylvania Rules of Civil Procedure regulating discovery. The court disagrees with this premise. Discovery is a process which occurs prior to a

trial or hearing; the claimant's request is based upon a subpoena issued in conjunction with an auditor's hearing. Thus, any applicable legal authority must be gleaned from rules and statutes governing the court's subpoena powers. Unfortunately, with the advent of the much heralded Judicial Code, there is no clear and specific guidance as to the scope of these powers. Prior specific statutes, such as the Act of June 16, 1836, P.L. 784, 17 P.S. §2079, have been repealed and replaced by the most general of statutes such as 42 Pa.C.S.A. §§323 and 912. These latter statutory provisions are relatively useless in assisting in a determination of the various questions presently before the court. The court by necessity is left to its own concepts of what is fair and just in the furtherance of the policies allowing litigants to have access to evidence needed for hearing or trial purposes.

In approaching the problem presented by the motion to quash, it should be initially noted that Fidelity is not a party to the litigation. While its trust department is a party by virtue of its representation of decedent's estate in a fiduciary capacity, the checks being requested are from Fidelity's commercial operations and have nothing to do with Fidelity's administration of the estate. Claimants are seeking evidence of transactions occurring only during decedent's lifetime, and in this context the request is being made of a nonlitigant in this legal proceeding.

Against this background, it would seem that the court must weigh claimant's right to secure evidence from a nonlitigant against the expense to the nonlitigant of producing such evidence. Traditional judicial policy tends to favor a litigant in the securing of such evidence. However, some weight may be

given to the expense and inconvenience of producing subpoenaed records, but these factors are not conclusive as to the duty to produce them: 5 Standard Pa. Pract., Trial in General, §428.

Another factor to be considered should be the relevance and probative value of the requested records. If a third party is to be put to considerable expense and inconvenience to produce records to satisfy a litigant's evidentiary desires, then the court ought to be satisfied that the evidentiary value of the requested items is significant. In this case, the requested checks are being sought with the hope that they will establish that claimants were not paid for the alleged services during decedent's lifetime out of this particular account. As such, the missing checks have relevance on the issue of nonpayment. However, their conclusiveness on that issue is questionable since existing case law apparently supports a denial of the claim even in the face of such evidence of nonpayment. Thus, the significance of the requested checks may well be diminished when considered against their effect on the outcome of the case. Obviously the court is not cognizant of the other evidence which claimants have presented before the auditor, and no attempt is being made to predict the outcome of the proceeding. The present observation is made only for the purpose of indicating that the requested checks, even when viewed in a light most favorable to claimants, will not be conclusive evidence of the validity of their claim.

With these considerations in mind, the court has three alternatives open. It can quash the subpoena thereby giving the nonlitigant absolute relief, or it can allow the subpoena to stand thereby affording claimants full relief. Both of these alternatives rep-

resent an extremist approach in a situation where both positions have some merit; to completely favor one side over the other would be to ignore the latter's interests. Therefore, a more balanced approach would be to recognize both positions and to allow for the production of the checks, requiring claimants to post $1,000 as security to cover the estimated cost of retrieval of copies of the checks and to be responsible for any additional reasonable and necessary expenses associated with those efforts.

Claimants have argued that the posting of such security erroneously places court costs on them. The court disagrees with this reasoning. The questions of whether these costs are court costs, and if they are, against whom they should be assessed are not presently before the court. Thus any consideration of them as court costs to be taxed against one side or the other is premature.

## ORDER

And now, July 29, 1980, based upon the foregoing memorandum, it is hereby ordered that the petition to quash subpoena filed on behalf of Fidelity National Bank of Pennsylvania be dismissed and the requested relief be denied with the qualification that prior to any enforcement of said subpoena, claimants deposit the sum of $1,000 with the prothonotary to be held and used to reimburse Fidelity National Bank of Pennsylvania for its necessary and reasonable expenses of complying with the subpoena with claimants to be responsible to Fidelity National Bank for any such additional expense.